# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JOHN KEHOE and KATHY KEHOE, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 3:10-cv-00256-RCJ-RAM<br>) |
| AURORA LOAN SERVICES LLC, QUALITY LOAN SERVICE CORP, JIM McGILL and DOES 1 thru 10, inclusive, | ) ORDER<br>)<br>) |
| Defendants. | )<br>) |

Currently before the Court is Defendant Aurora Loan Services LLC's ("Aurora") Motion to Dismiss the Complaint (#5) filed on May 5, 2010. Plaintiffs John Kehoe and Kathy Kehoe (collectively referred to herein as "Plaintiffs") filed an Opposition (#15) on June 11, 2010, and Aurora filed a Reply (#18) on June 21, 2010.

Also before the Court is Plaintiffs' Motion to Remand (#6) filed on May 7, 2010. Aurora filed an Opposition (#12) on June 1, 2010, and Defendant Quality Loan Service Corporation ("Quality") filed a Joinder (#13) on June 2, 2010.

Also before the Court is Plaintiffs' Motion to Enlarge Time and Motion to Certify Question to the Nevada Supreme Court (#20) filed on July 23, 2010.[1] Quality filed an Opposition (#21) on August 6, 2010, and Plaintiffs filed a Reply (#22) on August 16, 2010.

The Court heard oral argument on the motions on September 27, 2010.

## BACKGROUND

Plaintiffs are former owners of property located at 821 Golfers Pass Road in Incline

---

[1] Plaintiffs' motion to enlarge time was filed in response to a Motion for Summary Judgment (#19) filed by Quality on July 15, 2010.

Village, Nevada. On October 20, 2006, Plaintiffs executed a promissory note and deed of trust which listed First Magnus Financial Corporation as the lender and Mortgage Electronic Registration Systems, Inc. as the beneficiary. The trustee of the deed of trust was originally First American Title, but the beneficiary substituted Defendant Quality Loan Service Corporation ("Quality") as the trustee on March 5, 2009. Aurora assumed the servicing of the loan sometime after origination.

At some point, Plaintiffs fell behind in their monthly mortgage payments and were allegedly negotiating with Aurora to re-work their defaulted mortgage. During that time, on September 24, 2009, Quality's agent recorded a Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust. On March 10, 2010, Quality recorded a Notice of Trustee's Sale, and Aurora purchased the property at a trustee's sale on March 31, 2010. Plaintiffs received notice of these recordings via certified mail.

On March 31, 2010, Plaintiffs commenced this action by filing a Complaint for Quiet Title in state court. Plaintiffs filed suit against the loan servicer (Aurora), the trustee on the deed of trust (Quality), and the "crier" at the foreclosure sale (Jim McGill). Plaintiffs' Complaint asserts three causes of action. The first cause of action appears to allege that Defendants failed to satisfy the notice provisions under Nevada law when they conducted a nonjudicial foreclosure on the property. The second cause of action appears to assert a violation of the Nevada Deceptive Trade Practices Act by Defendant Quality. Finally, the third cause of action asserts a violation of the implied covenant of good faith and fair dealing by Defendant Aurora.

Following the filing of the Complaint in this matter, Aurora removed the case to federal court on the grounds of diversity jurisdiction. Aurora asserts that there is complete diversity between the parties because the individual defendant, Jim McGill, was fraudulently joined. Plaintiffs now seek remand of this case to state court. In addition, Aurora has moved to dismiss the claims asserted against it.

## DISCUSSION

**I. Motion to Remand**

Plaintiffs argue that this case was improperly removed from state court. (Motion to

2

Remand (#6) at 2). According to Plaintiffs, there "are Nevada parties on both sides of this matter, so there is no diversity jurisdiction." Id. at 3. Moreover, Plaintiffs assert that the complaint is predicated on state law, and does not arise under federal law. Id.

In response, Aurora argues that there "is complete diversity because Defendant Jim McGill was fraudulently joined." (Opp'n to Mot. to Remand (#12) at 1). According to Aurora, McGill's joinder was fraudulent because Plaintiffs do not assert any cause of action against him. Rather, he is merely identified in the Complaint as the "crier" at the foreclosure sale. Id. at 2. Because Plaintiffs do no assert any factual allegations or claims for relief against McGill, Aurora argues that he is a sham defendant and his citizenship does not impact diversity.

"A motion to remand is the proper procedure for challenging removal." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009). "The removal statute is strictly construed and any doubt about the right of removal requires resolution in favor of remand." Id. "It is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006)(quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)(alterations in original). The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," and that the court resolves all ambiguity in favor of remand to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

**A. Diversity of Citizenship**

Diversity jurisdiction is governed by 28 U.S.C. § 1332. According to that statute, the district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different States." 28 U.S.C. 1332(a). Although an action may be removed to federal court only where there is complete diversity of citizenship, "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009)(quoting Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th

3

Cir. 2001)). Joinder is fraudulent "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." Hunter, 582 F.3d at 1043 (internal quotations and citations omitted). In such a case, "the district court may ignore the presence of that defendant for the purpose of establishing diversity." Id.

In this case, the Court finds that removal was proper because the non-diverse defendant, Jim McGill, was fraudulently joined. The Complaint identifies McGill as a resident of Nevada and states that he "is the person who cried the foreclosure sale on March 31, 2010 on behalf of the beneficiary." (Compl. (#1) at 7). Plaintiffs state that after McGill cried the foreclosure on their house, they asked who the beneficiary was and McGill stated he did not know. No other facts are alleged as to McGill. Thus, although McGill is referenced in the Complaint as the "crier" at the foreclosure sale, he is not named in any of the causes of action alleged by Plaintiffs.

In their motion to remand, Plaintiffs argue that McGill is not a sham defendant because his lack of knowledge regarding the beneficiary was an "irregularity" in the foreclosure sale under state law. (Mot. for Remand (#6) at 6).

Despite Plaintiffs' argument to the contrary, Plaintiffs have not asserted any claim against McGill in his individual capacity. As noted in the foregoing, Plaintiffs fail to name McGill in any of their causes of action. Moreover, these claims appear to relate solely to Quality and Aurora. In addition, Plaintiffs have provided no authority that a crier is liable for wrongful foreclosure in Nevada for failing to name the beneficiary following a non-judicial foreclosure sale. Plaintiffs have also failed to assert any duty owed to them by McGill on which liability could be predicated. Because Plaintiffs have not asserted a cause of action against McGill, his citizenship may be ignored for purposes of determining diversity jurisdiction. Ignoring McGill's citizenship, the remaining parties are completely diverse and removal was appropriate.

**B. Amount in Controversy**

In addition to the foregoing, Plaintiffs also argue remand is required because the

4

amount in controversy does not exceed $75,000. According to Plaintiffs, in their Complaint, they plead actual damages "in excess of $10,000, but less than $75,000 in an amount according to proof at the time of trial against Quality and Aurora." (Compl. (#1) at 15). Aurora, on the other hand, argues that the amount in controversy exceeds $75,000 because Plaintiffs are seeking to set aside a foreclosure sale for property purchased for more than $981,000. (Opp'n to Mot. to Remand (#12) at 4). According to Aurora, Plaintiffs are seeking to undo a transaction "worth nearly one million dollars." Id.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Cohn v. Petsmart, Inc., 281 F.3d 837, 841 (9th Cir. 2002)(quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation. Reyes v. Wells Fargo Bank, N.A., 2010 WL 2629785 *4 (N.D. Cal. 2010)(citing Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973)); see also Cabriales v. Aurora Loan Servs., 2010 WL 761081 *3 (N.D. Cal. 2010)(holding that the object of the litigation was the property the plaintiff sought to enjoin the defendant from selling); Henderson v. Nationstar Mortg. Co., LLC, 2008 WL 302374 *1 (W.D. Wash. 2008)(holding that the object of the litigation was the property the plaintiff sought to enjoin the defendant from selling at a non-judicial foreclosure sale). "Even if the property at issue has already been sold in foreclosure by the defendant . . . the property may still be the object of the litigation when the plaintiff sues for injunctive relief." Reyes, 2010 WL 2629785 *5; see also Delgado v. Bank of Am. Corp., 2009 WL 4163525 *6 (E.D. Cal. 2009). In Delgado, the plaintiff entered into a deed of trust with the defendant to secure its purchase of a home, then defaulted on its loan payments, and the defendant later sold the property in a non-judicial foreclosure proceeding. 2009 WL 4163525 *2. The defendant had already sold the plaintiff's property when the plaintiff filed suit seeking damages, declaratory, and injunctive relief, including an order to set aside the sale of the property. Id. The court ruled that the object of the litigation was the foreclosed property. Id. at *6.

Based on the foregoing, the Court finds that the amount in controversy exceeds the jurisdictional limit. In cases seeking injunctive relief from a foreclosure sale, the value of the property at issue is the object of the litigation for the purposes of determining the amount in controversy. In this matter, Plaintiffs are seeking to undo a non-judicial foreclosure sale in which the property was sold for approximately $981,000. Because the object of the litigation is worth significantly more than $75,000, the amount in controversy requirement has been met and this case was properly removed.

Thus, the Court denies Plaintiffs' motion to remand. The Court has diversity jurisdiction over this matter in that the parties are diverse and the amount in controversy exceeds $75,000.

## II. Motion to Dismiss

Aurora filed a motion to dismiss on the grounds that the causes of action in Plaintiffs' Complaint fail to state a claim upon which relief can be granted. According to Aurora, Plaintiffs have asserted two claims for relief against it: (1) quiet title based on wrongful foreclosure, and (2) violation of the duty of good faith and fair dealing. Aurora states that these claims for relief have no basis in Nevada law and should be dismissed. (Mot. to Dismiss (#5) at 2). In response, Plaintiffs state that they have asserted valid causes of action against Aurora because Aurora initiated a foreclosure that "did not comply with state law." (Opp'n to Mot. to Dismiss (#15) at 2). In addition, Plaintiffs assert that there was a contractual relationship between the parties giving rise to a duty of good faith and fair dealing which Aurora violated.

### A. Legal Standard

When considering a 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. V. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. The Ninth Circuit, however, has expanded the court's view to allow

consideration of documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion into a motion for summary judgment. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court should exercise caution, however, and presume against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). To avoid a Rule 12(b)(6) dismissal, then, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though "detailed factual allegations" are not required for a complaint to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. Additionally, the pleading should convince the court that the facts provide more than "a suspicion [of] a legally cognizable right of action." Id.

### B. Wrongful Foreclosure

Plaintiffs' first cause of action is for wrongful foreclosure. According to Plaintiffs, although they received the required Nevada statutory notices for a non-judicial foreclosure proceeding under NRS § 107.080, those notices failed to include the following information that was required by the deed of trust: (1) the amount of the default; (2) the amount necessary to cure the default and a date certain within which to cure; (3) that if the default were not cured, the amount due under the note would be accelerated and that the Trustee would conduct a foreclosure sale; and (4) Plaintiffs' right to have enforcement of the security interest

7

discontinued at any time before 5 days prior to the sale date if they were to meet certain conditions.[2] Based on these alleged notification failures, Plaintiffs assert that there were substantial irregularities in the foreclosure proceedings and the sale of their property should be vacated.

In its motion, Aurora argues that the claim of wrongful foreclosure must be dismissed because the foreclosure proceedings were proper under Nevada law. Although Plaintiffs allege a variety of purported errors, Aurora states that Quality and its agent substantially complied with Nevada's non-judicial foreclosure statute. According to Aurora, although the deed of trust required that certain information be provided to Plaintiffs, it did not require that such information be recorded with the notice of default. Aurora states that "Plaintiffs have not alleged that Aurora never gave them the notice called for in . . . the deed of trust, only that it was not in the recorded notice of default." Id. at 4-5.

In addition, Aurora states that even if Plaintiffs were correct that there had been a failure to comply with the requirements of the deed of trust, "Nevada law does not make a sale improper based on such a violation." Id. at 5. Rather, Aurora states that in Nevada, a sale may only be set aside for failure to substantially comply with statutory requirements. Aurora states that this claim should be dismissed because the Complaint does not raise any viable issues regarding compliance with NRS § 107.080 - the nonjudicial foreclosure statute at issue in this matter.

In response, Plaintiffs assert that Defendants were required to follow the Nevada statutory scheme for non-judicial foreclosure proceedings. Plaintiffs state that "[i]t is a cornerstone of Nevada law that a homeowner be given a reasonable opportunity to cure a default before a home is taken away;" however, in this case, Plaintiffs assert that the notice

---

[2] Paragraph 22 in the deed of trust on the property provided that the lender "shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument." (Mot. to Dismiss (#5) at Ex. A, p. 13). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Interest and sale of the Property. Id. The deed does not specify how this notice is to be given.

of breach and election to sell did not "specify the amount needed to reinstate the loan." (Opp'n to Mot. to Dismiss (#15) at 4). Because it did not specify that amount, Plaintiffs assert that they lacked notice or the opportunity to cure under NRS § 107.080. In addition, Plaintiffs argue that the "notice of trustee sale was accompanied by so much extraneous material as to make it virtually meaningless." Id. at 8. According to Plaintiffs, Quality sent them "so much paperwork" with respect to the foreclosure that "they could not make heads nor tails of it" and that it was tantamount to "no notice at all." Id.

In this case, Plaintiffs have failed to state a claim for wrongful foreclosure. In the Complaint, Aurora is not identified or mentioned in that cause of action. Rather, the cause of action appears to be directed solely at Quality. Plaintiffs repeatedly state that Defendant Quality failed to provide the information required by the deed of trust and specifically that the notice of default and election to sell "*prepared and filed by Quality*" failed to contain the alleged necessary information. (Compl. (#1) at Ex. A, 11)(emphasis added). The Complaint does not assert that Aurora failed to make the necessary disclosures or that Aurora was involved in the preparation and filing of the notice of default. Because Plaintiffs fail to assert any factual allegations against Aurora as to wrongful foreclosure, this claim is dismissed pursuant to Rule 12(b)(6).

In addition, based on the allegations in the Complaint and the statutory notices recorded with the Washoe County Recorder's office, the Court finds that the foreclosure procedure in this case complied with NRS § 107.080.[3]

Nevada law provides that a deed of trust is an instrument that may be used to "secure the performance of an obligation or the payment of any debt." NRS § 107.020. When a debtor defaults, the creditor beneficiary may resort to its security in a trustee's sale as a means of satisfying the debtor's obligation. NRS § 107.080.

---

[3] Although a court's review on a 12(b)(6) motion to dismiss is generally "limited to the contents of the complaint," the court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The statutory notices are referenced in the Complaint.

The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in NRS § 107.080. The foreclosure process is commenced by the recording of a notice of breach and election to sell by the trustee. NRS § 107.080(2)(c). After the notice of default is recorded, the trustee must wait three months. NRS § 107.080(2)(d). The trustee must then give notice of the time and place of the sale. NRS § 107.080(4).

NRS § 107.080(3) provides that the notice of default and election to sell must "[d]escribe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust. . . ." NRS § 107.080(3)(a). In addition, if the property is a residential foreclosure, the notice of default and election to sell must comply with the provisions of NRS § 107.087. NRS § 107.080(3)(b). NRS § 107.087 provides that a notice of default and election to sell must include the physical address of the property and the contact information of the trustee or the person conducting the foreclosure who is authorized to provide information relating to the foreclosure status of the property. NRS § 107.087(1)(b).

Finally, NRS § 107.080(5) states that a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place" if the "trustee or other person authorized to make the sale does not substantially comply with the provisions of this section. . . ."

Here, Plaintiffs assert that the foreclosure sale should be declared void because the notice of default and election to sell did not contain information required in the notice provisions of the deed of trust. Specifically, Plaintiffs allege that the "failure to adhere to the notice provisions contained in the deed of trust" constituted a substantial irregularity for which the foreclosure sale should be vacated.

In this matter, the Court grants Aurora's motion to dismiss the wrongful foreclosure claim because the allegations in Plaintiffs' Complaint fail to establish that Defendants did not comply with the requirements of NRS §§ 107.080 and 107.087 in conducting the foreclosure sale on the property. Although the deed of trust may have included notice provisions following a default, Nevada statutory law does not require that those notice provisions be included in the

notice of default filed with the county recorder. Plaintiffs argue that because the notice of default did not include the amount Plaintiffs must pay to cure the default, the notice was fatally misleading and not in substantial compliance with Nevada law. However, Nevada law does not require that the amount to cure the default be recorded with the notice of default. Rather, Nevada law requires that the notice of default contain the physical address of the property and the contact information of the trustee or person conducting the foreclosure who is authorized to provide information relating to the foreclosure status of the property. See NRS § 107.087(1)(b).

Thus, because the foreclosure proceeding on Plaintiffs' property complied with Nevada law, there is no grounds to vacate the sale of the property, and Aurora's motion to dismiss the wrongful foreclosure claim is granted.

### C. Duty of Good Faith and Fair Dealing

Plaintiffs' have asserted a cause of action for violation of the duty of good faith and fair dealing against Aurora. According to Plaintiffs, Aurora was the servicer of their mortgage and "[i]n assuming the duties as servicer of the note and enforcer of the deed of trust, Aurora assumed any and all of the duties and obligations that ran between the Plaintiffs and Magnus (the original lender), when those documents were executed." (Compl. (#1) at Ex. A, 14). Plaintiffs state that in 2009, Plaintiffs found it difficult to make their mortgage payments and entered "into lengthy negotiations to have the amount reduced so they could afford it, which involved the transmission of large amounts of paperwork back and forth between the parties." Id. at 11. Plaintiffs argue that Aurora did not act in good faith during the modification process, and that Aurora failed "to modify the loan in such a way as to make it affordable for the Plaintiffs." Id. Based on the foregoing, Plaintiffs allege that Aurora is liable for breaching the covenant of good faith and fair dealing.

Aurora moves to dismiss this cause of action on the grounds that there "was no contract to which Aurora and [Plaintiffs] were both parties." (Mot. to Dismiss (#5) at 7). Aurora states that Plaintiffs incorrectly assert that as the loan servicer, Aurora assumed all of the lender's duties. Aurora states that in its role as servicer, it was merely performing the administrative

11

function of receiving payments from Plaintiffs. It did not acquire the loan from its originator. Such a relationship, according to Aurora is not contractual in nature. Because there was no underlying contractual relationship, Aurora states that it cannot be liable for breaching the implied covenant of good faith and fair dealing. In addition, Aurora states that Plaintiffs have failed to state a claim for breach of the implied covenant because Plaintiffs received everything they were entitled to under the loan agreement - specifically, money to purchase the subject property. Id. at 7. Aurora states that it was Plaintiffs that breached any alleged contractual agreement when they stop paying their mortgage. As such, Aurora states that this claim must be dismissed.

"It is well established within Nevada that every contract imposes upon the contracting parties the duty of good faith and fair dealing." Hilton Hotels Corp. v. Butch Lewis Prod., Inc., 109 Nev. 1043, 1046, 862 P.2d 1207 (Nev. 1993). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." Hilton Hotels Corps. v. Butch Lewis Prods., Inc., 107 Nev. 226, 232, 808 P.2d 919 (Nev. 1991). A breach of the covenant occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract . . . ." Id. at 922-23. In Nevada, only a party to a contract can be liable for breach of the duty of good faith and fair dealing. See Id.

As noted in the foregoing, Plaintiffs assert that Aurora, as their loan servicer, assumed the duties of the lender under the deed of trust. However, courts have held that a loan servicer, such as Aurora, is not a party to the deed of trust. See Conder v. Home Sav. of Am., 680 F.Supp.2d 1168, 1174 (C.D. Cal. 2010); see also Ruff v. Am.'s Servicing Co., 2008 WL 1830182 (W.D. Pa. 2008)(holding that a servicer is "not a party to the mortgage"). Moreover, the fact that Aurora serviced Plaintiff's loan does not create contractual privity between Aurora and the Plaintiffs. Lomboy v. SCME Mortg. Bankers, 2009 WL 1457738 *5 (N.D. Cal. 2009).

In this matter, because Plaintiffs have failed to establish that there was an underlying contractual relationship between Plaintiffs and Aurora, Aurora cannot, as a matter of law, be

12

liable for violation of the covenant of good faith and fair dealing. In addition, Plaintiffs have failed to assert that any underlying contract included a right to modification. In this regard, Plaintiffs assert that Aurora contravened the intention and spirit of the contract by failing to negotiation a modification on their loan. Because there was no contractual right to modification, Plaintiffs have failed to establish that Aurora acted in a manner unfaithful to the contract. As such, this claim is dismissed.

### D. Leave to Amend

At oral argument, Plaintiffs requested leave to amend their Complaint in order to state a claim for beach of contract based on a participation agreement entered into under the Home Affordable Modification Program between Aurora and the federal government. In their opposition to Aurora's motion to dismiss, Plaintiffs state that Aurora received money from the federal government under the Home Affordable Modification Program. (Opp'n to Mot. to Dismiss (#15) at 7). According to Plaintiffs, after taking federal money "Aurora did not live up to its obligations under this agreement, and in doing so breached its obligation of good faith and fair dealing." Id. at 8.

In response, Aurora states that Plaintiffs have no right to sue for breach of contract on their participation agreement under the Home Affordable Modification Program. Aurora concedes that it is a participant in the federal program; however, Aurora states that any obligations it has under that program are to the other contracting party - the federal government. (Reply (#18) at 6). According to Aurora, Plaintiffs "are not intended beneficiaries of the agreement; rather they are incidental beneficiaries with no rights to enforce the agreement." Id.

Under Rule 15, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003)(internal quotation marks and citation omitted). However, a district court may deny leave to amend "when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." Ventress v. Japan Airlines, 603 F.3d 676, 680 (9th Cir. 2010).

In this case, the Court denies Plaintiffs' request for leave to amend on the ground that such amendment would be futile. In Escobedo v. Countrywide Home Loans, Inc., the district court addressed the issue of whether a homeowner could sue for breach of contract on a participation agreement under the Home Affordable Modification Program. 2009 WL 4981618 (S.D. Cal. 2009). The plaintiff in that case attempted to sue on the participation agreement as a third-party beneficiary. Id. at *2. Countrywide argued that the plaintiff lacked standing to sue because he was not an intended third-party beneficiary. Id. The district court agreed with Countrywide. According to that court, "[t]o sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." Id. (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 2000)). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." Id. (citing Restatement § 302(1)(b) cmt. d.). In Escobedo, the court noted that the Ninth Circuit cautions that "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary . . . . Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."[4] Escobedo, 2009 WL 4981618 *2 (quoting Klamath, 204 F.3d at 1211)).

The court held that the participation agreement at issue was entered "into in part for the benefit of qualified borrowers and with these borrowers in mind." Escobedo, 2009 WL 4981618 * 2. "However, the language of the contract does not show that the parties intended to grant qualified borrowers the right to enforce the Agreement." Id. "Indeed, the Agreement specifies that it 'shall inure to the benefit of . . . the *parties to the Agreement and their*

---

[4] In Klamath, the Ninth Circuit held that although a contract between the United States and a dam operator operated to the irrigators' benefit and was 'undoubtedly entered into with the irrigators in mind,' nothing in the contract evinced an intention of the parties to the contract to grant the irrigators enforceable rights. Klamath, 204 F.3d at 1211-12. The Ninth Circuit explained, "to allow them intended third-party beneficiary status would open the door to all users receiving a benefit from the Project by achieving similar status, a result not intended by the Contract. Id. at 1212.

*permitted successors-in-interest.'"* Id. Thus, the court found that the borrowers were incidental beneficiaries of the participation agreement and do not have enforceable rights under the contract. Id.

In Benito v. Indymac. Mortg. Services, the Nevada district court agreed with the holding in Escobar. 2010 WL 2130648 *7 (D.Nev. 2010). In that case, the court stated that the plaintiffs had not identified anything in the Home Affordable Modification Program contract "which clearly expresses a promissory intent to benefit borrowers." Id. Rather, according to that court, "the HAMP contract contains a provision stating that the 'Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest.'" Id. The court found it significant that the "Agreement nowhere states that it gives borrowers any rights or otherwise expressly intends to confer third party beneficiary status on borrowers." Id.

The agreement at issue in this case contains a similar clause. It provides that: "The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." (See Servicer Participation Agreement at ¶ 11.E, attached as Ex. 2 to Opp'n to Mot. to Dismiss (#15)). Similar to Benito, the agreement does not give borrowers any rights or confer third party beneficiary status on them.

Based on the foregoing, the Court denies Plaintiffs' request to amend to include a breach of contract claim under the Home Affordable Modification Program. The Court agrees with the conclusions reached by the courts in Escobar and Benito that the language of the agreement does not confer third party beneficiary status on borrowers. See also Burtzos v. Countrywide Home Loans, 2010 WL 2196068 *2 (S.D. Cal. 2010)(holding that borrowers lacked standing to sue for an alleged breach of a servicer agreement); Kamp v. Aurora Loan Services, 2009 WL 3177636 *4 (C.D.Cal 2009); Villa v. Wells Fargo Bank, N.A., 2010 WL 935680 *3 (S.D.Cal. 2010)(adopting the reasoning set forth in Escobedo). Thus, Plaintiffs' request to amend is denied.

### III. Certification of Question to the Nevada Supreme Court

Plaintiffs have filed a motion to certify a question to the Nevada Supreme Court.

Specifically, Plaintiffs request that this Court ask the Nevada Supreme Court for its interpretation of the term "substantial compliance" under NRS 107.080(5)(a)(2). (Mot. to Certify Question (#20) at 4). According to Plaintiffs, they have alleged "that Quality's failure to specify the amount of the default in payment and the time which that default may be cured, renders it not in 'substantial compliance' with Nevada law and thus fatally defective." Id. at 3. Plaintiffs state that this issue has not been addressed by the Nevada Supreme Court, "and it is for this reason that this court should certify the matter to the Nevada Supreme Court for resolution, rather than deciding the matter directly." Id.

In response, Quality argues that there is no issue which needs to be certified to the Nevada Supreme Court. (Opp'n to Mot. to Certify Question (#21) at 3). According to Quality, the "substantial compliance" language is clear and does not require that a foreclosing party specify a reinstatement figure in the notice of default. Id.

Under the Nevada Rules of Appellate Procedure:

> The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States or of the District of Columbia, a United States District Court, or a United States Bankruptcy Court when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

Nev. R. App. P. 5(a). A federal court may decide not to certify a question to a state supreme court where it would be inefficient and uneconomical. See In re Sullivan, 200 B.R. 682, 685 (Bankr.D.Nev. 1996). In Nevada, certification is granted if the answer may be determinative of part of the federal case, there is no controlling Nevada precedent, and the answer will help settle important questions of law. Volvo Cars of N.Am., Inc. v. Ricci, 122 Nev. 746, 750-51, 137 P.3d 1161 (Nev. 2006).

In this matter, the Court denies Plaintiffs' request for certification. The statutory language provided in NRS 107.080 is sufficiently clear for courts to apply. NRS § 107.080(5) provides that a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place" if the "trustee or other person authorized to make the sale does not substantially comply *with the provisions of this section.*

. . ." NRS § 107.080(5)(emphasis added). As noted by the italicized language, the term "substantial compliance" relates to the requirements set for in NRS § 107.080. In this case, the Court found that Defendants complied with the provisions of NRS § 107.080 during the non-judicial foreclosure proceedings. Thus, certification to the Nevada Supreme Court is unnecessary to determine the merits of this action.

**IV. Motion to Enlarge Time**

Finally, Plaintiffs filed a motion to enlarge time seeking an extension within which to file a response to Quality's motion for summary judgment filed on July 15, 2010. Plaintiffs allege that this extension is merited on the grounds that the Court must first determine whether it has jurisdiction to decide this case on Plaintiffs' motion to remand. According to Plaintiffs, they should not be required to file a timely response to Quality's motion because the "matter will be moot if the remand or dismissal is granted." (Mot. to Enlarge Time (#20) at 2). In response, Quality argues that Plaintiffs' motion should be denied because it "is nothing more than a delay tactic." (Opp'n to Mot. to Enlarge Time (#21) at 2).

In this case, the Court will grant Plaintiffs' motion and allow them 15 days from the date of this Order to file a response to Quality's Motion for Summary Judgment (#19). Although the Court has dismissed the claims against Aurora, there is still a claim pending against Quality based on violation of the Nevada Fair Debt Collection Practice Act. (See Compl. (#1-1) at 7). If Plaintiffs believe this claim is "moot" as stated above, Plaintiffs shall file a motion for voluntary dismissal in the alternative.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiffs' Motion to Remand (#6) is DENIED.

IT IS FURTHER ORDERED that Defendant Aurora Loan Services LLC's Motion to Dismiss the Complaint (#5) is GRANTED with prejudice.

///

///

///

IT IS FURTHER ORDERED that Plaintiffs' Motion to Enlarge Time (#20) is GRANTED. Plaintiffs shall have 15 days from the date of this Order to file their opposition to Defendant Quality Loan Service Corporation's Motion for Summary Judgment (#19), or, in the alternative, a motion for voluntary dismissal.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Question to the Nevada Supreme Court (#20) is DENIED.

DATED: This 20th day of October, 2010.

_____
United States District Judge